# UNITED STATES DISTRICT COURT
# WESTERN DISTRICT OF KENTUCKY
# AT LOUISVILLE

JASON KYLE SNELLEN                                                                          PLAINTIFF

v.                                                    CIVIL ACTION NO. 3:18-CV-P115-GNS

HEATHER KENNEDY                                                        DEFENDANT

## MEMORANDUM OPINION AND ORDER

This is a *pro se* civil rights action brought by a pretrial detainee pursuant to 42 U.S.C. § 1983. The Court has granted Plaintiff Jason Kyle Snellen leave to proceed *in forma pauperis*. This matter is before the Court for screening pursuant to 28 U.S.C. § 1915A. For the reasons set forth below, the Court will dismiss certain claims but allow Plaintiff the opportunity to amend his complaint.

## I. SUMMARY OF COMPLAINT

Plaintiff is incarcerated at Hardin County Detention Center (HCDC). He brings this action against Defendant Heather Kennedy in her official capacity as a nurse at Southern Health Partners (SHP).

Plaintiff first states that on November 15, 2017, "I dislocated my left knee, my knee cap was dislodged and located on the side of my leg. Knee cap went back into place after straighting my leg out." He then alleges that at around 2:00 a.m. the following morning, the swelling in his knee worsened so that he could not walk. At that time, he asked a correctional officer to call "medical." Plaintiff then writes:

> When the nurse came to my pod and looked at my knee, she told [the correctional officer] to the medical room. [The correctional officer] told that nurse I wasn't able to walk, all she said is that she couldn't do anything for me until I was brought to medical. So [the correctional officer] went to get a wheelchair. While at medical, the nurse only asked what happened and took my vitals. She didn't do any joint test on my knee, I was given ibuprofen and an icepack. Around 9:00 a.m. . . . I was taken to medical to take x-ray on my knee. November 19th during

morning pill call, [Defendant] Kennedy told me my x-ray said there was nothing wrong with my knee, no swelling, no inflammation, brakes, nor bruising. [Another correctional officer] told her what do you mean you can see in plain sight that his knee is swollen.

Plaintiff next alleges that on November 26, 27, and 29, 2017, he completed medical requests to be seen for his knee injury. He states that on November 29, 2017, he was "seen by medical," and the nurse put him back on ibuprofen, gave him an ice pack, and put him on the list to be seen by the nurse practitioner. Plaintiff states that when he was not seen by the nurse practitioner on December 6, 2017, he completed another medical request form asking why he had not been seen, and that on December 9, 2017, he was "taken to medical" and told the nurse practitioner had said that he "was only to be monitored." Plaintiff states that he and the nurse again talked about what happened to his knee and she stated that she would put him back on the list to see the nurse practitioner "with a more detailed explanation about my knee." Plaintiff also states that he was given another ice pack at this time. He then writes that during pill call on this same day, Defendant Kennedy refused to give him another ice pack when he tried to exchange the one he had.

Plaintiff states that he was "finally seen by the nurse practitioner" on December 13, 2017. During this visit, the nurse practitioner told him she was going to order him a knee brace.

Plaintiff next writes that on January 5, 2018, approximately "three weeks" after he was told that a knee brace would be ordered for him, he was informed that he had not received a knee brace yet because "they received the wrong knee brace." Plaintiff then states that on January 6, 2018, he was given a "compression type knee brace that was too small" and then given "another knee brace that fits. But still not the type of support my knee needs."

Plaintiff states that on January 10, 2018, he was "taken to medical" after completing another request to be seen. He states that he told the nurse that he wanted to speak to the nurse

practitioner, and she told him that she would put him on the list. Plaintiff then writes: "But this makes 8 weeks sense I first injured my knee and it is still swollen. I sit here in pain and not knowing what's going on. The nurses don't check on me or monitor me, nor ask about my knee. I still don't have full movement in my knee."

Plaintiff next alleges that when he did not see the nurse practitioner on January 18, 2018, he was told that it was because "when I was seen on January 10 my knee had minimal swelling." Plaintiff then writes: "But my knee is still just as swollen from when the nurse practitioner seen it."

On January 25, 2018, Plaintiff alleges that he again "went to medical and talked to a nurse. She told me that there isn't much else they can do for my knee. She said she would talk to the nurse practitioner to try to get me some anti-inflammatory for my knee."

Plaintiff then writes that on February 4, 2018, "after 81 days they finally started giving me an anti-inflammatory for the swelling in my knee."

Plaintiff concludes his allegations as follows:

> I was told by medical that they won't do anything further with my knee because I dislocated my knee over 4 years ago. But not as bad as I did this time. I have never dislodged my knee cap before. . . . They say the pain is just arthritis. I've had arthritis in both of my knees for many years and know that the pain I have in my knee is not arthritis pain. They never did any ligament tests or scans other than the one x-ray. I still don't get checked or monitored. Nor do they ask how my knee is doing. So now I sit here still in pain and still don't have full movement in my knee.

As relief, Plaintiff seeks damages.

## II. LEGAL STANDARD

When a prisoner initiates a civil action seeking redress from a governmental entity, officer, or employee, the trial court must review the complaint and dismiss the complaint, or any portion of it, if the court determines that the complaint is frivolous or malicious, fails to state a

3

claim upon which relief may be granted, or seeks monetary relief from a defendant who is immune from such relief. *See* § 1915A(b)(1), (2); *McGore v. Wrigglesworth*, 114 F.3d 601, 604 (6th Cir. 1997), *overruled on other grounds by Jones v. Bock*, 549 U.S. 199 (2007).

In order to survive dismissal for failure to state a claim, "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* (citing *Twombly*, 550 U.S. at 556). "[A] district court must (1) view the complaint in the light most favorable to the plaintiff and (2) take all well-pleaded factual allegations as true." *Tackett v. M & G Polymers, USA, LLC*, 561 F.3d 478, 488 (6th Cir. 2009) (citing *Gunasekera v. Irwin*, 551 F.3d 461, 466 (6th Cir. 2009) (citations omitted)). "But the district court need not accept a 'bare assertion of legal conclusions.'" *Tackett*, 561 F.3d at 488 (quoting *Columbia Natural Res., Inc. v. Tatum*, 58 F.3d 1101, 1109 (6th Cir. 1995)). "A pleading that offers 'labels and conclusions' or 'a formulaic recitation of the elements of a cause of action will not do.' Nor does a complaint suffice if it tenders 'naked assertion[s]' devoid of 'further factual enhancement.'" *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 555, 557).

Although this Court recognizes that *pro se* pleadings are to be held to a less stringent standard than formal pleadings drafted by lawyers, *Haines v. Kerner*, 404 U.S. 519, 520-21 (1972); *Jourdan v. Jabe*, 951 F.2d 108, 110 (6th Cir. 1991), "[o]ur duty to be 'less stringent' with pro se complaints does not require us to conjure up unpled allegations." *McDonald v. Hall*, 610 F.2d 16, 19 (1st Cir. 1979) (citation omitted). And this Court is not required to create a claim for Plaintiff. *Clark v. Nat'l Travelers Life Ins. Co.*, 518 F.2d 1167, 1169 (6th Cir. 1975).

4

To command otherwise would require the Court "to explore exhaustively all potential claims of a *pro se* plaintiff, [and] would also transform the district court from its legitimate advisory role to the improper role of an advocate seeking out the strongest arguments and most successful strategies for a party." *Beaudett v. City of Hampton*, 775 F.2d 1274, 1278 (4th Cir. 1985).

### III. ANALYSIS

Plaintiff's official-capacity claim against Defendant Kennedy is deemed a claim against her employer, SHP. *See, e.g.*, *Smith v. Davis*, 5:17-CV-P187-GNS, 2018 U.S. Dist. LEXIS 41882, at *16 (W.D. Ky. Mar. 14, 2018) (finding official-capacity claim against a Correct Care Solutions (CCS) employee to be against CCS itself); *Prather v. Corr. Care Solutions*, No. 3:16-CV-P60-JHM, 2016 U.S. Dist. LEXIS 65363, at *12 (W.D. Ky. May 18, 2016) (same). The Sixth Circuit has held that the same analysis that applies to § 1983 claims brought against municipalities applies to private corporations contracted to provide medical services to inmates. *See, e.g.*, *Parsons v. Caruso*, 491 F. App'x 597, 609 (6th Cir. 2012) (recognizing that a "*Monell* custom or policy claim" can be brought under § 1983 against a private corporation that provides medical care to inmates).

When a § 1983 claim is made against a municipality, this Court must analyze two distinct issues: (1) whether Plaintiff's harm was caused by a constitutional violation; and (2) if so, whether the municipality is responsible for that violation. *Collins v. City of Harker Heights, Tex.*, 503 U.S. 115, 120 (1992). With regard to the second prong, a municipality cannot be held responsible for a constitutional deprivation unless there is a direct causal link between a municipal policy or custom and the alleged constitutional deprivation. *Monell v. New York City Dept. of Soc. Servs.*, 436 U.S. 658, 691 (1978); *Deaton v. Montgomery Cty., Ohio*, 989 F.2d 885, 889 (6th Cir. 1993). To demonstrate municipal liability, a plaintiff "must (1) identify the

municipal policy or custom, (2) connect the policy to the municipality, and (3) show that his particular injury was incurred due to execution of that policy." *Alkire v. Irving*, 330 F.3d 802, 815 (6th Cir. 2003) (citing *Garner v. Memphis Police Dep't*, 8 F.3d 358, 364 (6th Cir. 1993)). The policy or custom "must be 'the moving force of the constitutional violation' in order to establish the liability of a government body under § 1983." *Searcy v. City of Dayton*, 38 F.3d 282, 286 (6th Cir. 1994) (quoting *Polk Cty. v. Dodson*, 454 U.S. 312, 326 (1981) (citation omitted)).

In the instant case, Plaintiff has not alleged that any unconstitutional indifference to a serious medical need occurred as the result of a policy or custom implemented or endorsed by SHP. Accordingly, the Court will dismiss Plaintiff's official-capacity claim against Defendant Kennedy for failure to state a claim upon which relief may be granted.

However, upon review of Plaintiff's allegations, he may state a claim against Defendant Kennedy in her individual capacity. Therefore, the Court will give Plaintiff an opportunity to file an amended complaint to include all allegations which Plaintiff claims support his claim against Defendant Kennedy and to sue any other individuals who Plaintiff alleges violated his rights. *See, e.g.*, *LaFountain v. Harry*, 716 F.3d 944, 951 (6th Cir. 2013) ("[U]nder Rule 15(a) of the Federal Rules of Civil Procedure, a district court can allow a plaintiff to amend his complaint even when the complaint is subject to dismissal under the PLRA [Prison Litigation Reform Act].").

## IV. CONCLUSION

For the foregoing reasons, **IT IS HEREBY ORDERED** that Plaintiff's official-capacity against Defendant Kennedy is **DISMISSED** pursuant to 28 U.S.C. § 1915A(b)(1) for failure to state a claim upon which relief may be granted.

**IT IS FURTHER ORDERED that within 30 days from the entry date of this Memorandum Opinion and Order, Plaintiff may file an amended complaint which 1) indicates that he is suing Defendant Kennedy in her individual capacity and includes all allegations against her; and 2) identifies any other officials he seeks to name as Defendants in this action, specifies that he is suing the newly named Defendants in their individual capacities, and describes how each newly named Defendant was or continues to be deliberately indifferent to his serious medical need.** Plaintiff should submit a completed summons form for each Defendant within the same 30-day period.[1]

The Court will conduct an initial review of Plaintiff's amended complaint pursuant to § 1915A. Should Plaintiff fail to file an amended complaint with the above information within the allotted amount of time, Plaintiff's § 1983 claim will be dismissed for the reasons stated herein and his state-law negligence claim will be dismissed without prejudice pursuant to 28 U.S.C. § 1367(c)(3) because the Court declines to exercise supplemental jurisdiction over it.

---

[1] Regarding the completion of the summons forms, Plaintiff must: (1) prepare a summons for each Defendant sued; (2) write or type Defendant's name and address on the summons in the space provided; (3) write or type Plaintiff's name in the space provided; (4) **do not** fill in any other part of the summons form and **do not** mail the summons to any of the defendants.

**The Clerk of Court is DIRECTED** to send Plaintiff a § 1983 complaint form with this case number and the word "Amended" written in the caption along with four blank summons forms.

Date: April 17, 2018

**Greg N. Stivers, Judge
United States District Court**

cc: Plaintiff, *pro se*
Defendant Kennedy
Hardin County Attorney
4416.011